# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

LUCY P. DAWES, )
                               )
    *Plaintiff*     )
                               )
v.                              )     *Civil No. 09-493-B-W*
                               )
MICHAEL J. ASTRUE, )
**Commissioner of Social Security,** )
                               )
    *Defendant*   )

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the questions of whether the administrative law judge should have found that the plaintiff suffered from the severe impairments of chronic fatigue syndrome and depression, whether she misinterpreted certain evidence, and whether the opinions of the plaintiff's treating medical professionals should have been given controlling weight. I recommend that the court vacate the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from migrating arthralgias, degenerative disc disease, and status post rotator cuff repair, impairments that were severe but which, considered separately or in combination, did not meet or medically equal the

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on June 16, 2010, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

criteria of any of the impairments listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 3-4, Record at 9-11; that she retained the residual functional capacity to perform work at the light exertional level, except that she was only able to stand or walk up to two hours in an eight-hour day, could sit for up to eight hours in a day, and should never climb ropes, ladders, or scaffolds, Finding 5, *id*. at 11; that she was capable of performing her past relevant work as an industrial stitcher, Finding 5, *id*. at 14; and that the plaintiff, therefore, had not been under a disability as that term is defined in the Social Security Act at any time from November 1, 2004, the alleged date of disability onset, through the date of the decision, Finding 6, *id*. at 15. The Decision Review Board did not complete its review of the claim during the time allowed, *id*. at 1-2, making it the final determination of the Commissioner, 20 C.F.R. § 405.420(a).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 4 of the sequential process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's residual functional capacity ("RFC") and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. §§ 404.1520(f), 416.1520(f); Social Security Ruling

82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-62"), at 813.

The plaintiff's appeal also implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at this step, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1123 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* at 1124 (quoting Social Security Ruling 85-28).

## Discussion

### A. Severe Impairments

The administrative law judge found that the plaintiff's alleged chronic fatigue syndrome was not a medically determinable impairment and that her depression, while medically determinable, was not severe. Record at 10. The plaintiff asserts that the administrative law judge erred with respect to both impairments. Statement of Specific Errors ("Itemized Statement") (Docket No. 9) at 2-8. Specifically, she contends that the administrative law judge failed to comply with Social Security Ruling 99-2p in reaching her decision as to chronic fatigue syndrome and that the evidence supports a finding that her depression was severe.

With respect to the first claimed impairment, the administrative law judge said:

> The chronic fatigue syndrome diagnosis was made based on the claimant's complaints of fatigue and the fact that there appeared to be no medical reason for her complaints. There were no confirming laboratory

> reports and the cause of the fatigue has never been determined. The claimant underwent a sleep study which was normal. Her laboratory values have been normal and a lab report indicated the diagnosis (of chronic fatigue syndrome) was doubtful. Cardiac testing was also normal.

Record at 10.

The administrative law judge did not indicate to which lab report she referred. The only contenders that I can find are found at pages 277 and 294 of the record in Exhibit 9F, which was cited by the administrative law judge generally, at the end of the paragraph in which the quoted language appeared. The first is a blood test dated January 30, 2007; the reviewer, whose initials are indecipherable, includes the remark that "[t]he 'chronic fatigue syndrome' is not associated with significant laboratory abnormalities[;] therefore the diagnosis is in question in this case." The second is a blood test dated February 7, 2006; the unidentifiable reviewer comments that "FATIGUE[] may be related to a variety of conditions with systemic effects. However this study reveals no potential cause." Neither of these comments, assuming *arguendo* that they were made by an acceptable medical source, which is required when the issue is the existence of a medical condition or impairment, 20 C.F.R. §404.1513(a), can fairly be said, in the administrative law judge's phrase, to "indicate[]" that the existence of chronic fatigue syndrome was "doubtful."

Social Security Ruling 99-2p governs the evaluation of disability claims involving chronic fatigue syndrome. It is not mentioned in the administrative law judge's opinion in this case. It provides, in relevant part:

> Under the C[enters for] D[isease] C[ontrol] definition, the hallmark of C[hronic] F[atigue] S[yndrome] is the presence of clinically evaluated, persistent or relapsing chronic fatigue that is of new or definite onset (i.e., has not been lifelong), cannot be explained by another physical or mental disorder, is not the result of ongoing exertion, is not substantially alleviated by rest, and results in substantial reduction in previous levels of occupational, educational, social, or personal activities. Additionally, the current CDC definition of CFS requires the concurrence of 4 or more

4

of the following symptoms, all of which must have persisted or recurred during 6 or more consecutive months of illness and must not have pre-dated the fatigue:

- Self-reported impairment in short-term memory or concentration severe enough to cause substantial reduction in previous levels of occupational, educational, social, or personal activities;
- Sore throat;
- Tender cervical or axillary lymph nodes;
- Muscle pain;
- Multi-joint pain without joint swelling or redness;
- Headaches of a new type, pattern, or severity;
- Unrefreshing sleep; and
- Postexertional malaise lasting more than 24 hours.

Within these parameters, an individual with CFS can also exhibit a wide range of other manifestations, such as muscle weakness, swollen underarm (axillary) glands, sleep disturbances, visual difficulties (trouble focusing or severe photosensitivity), or thostatic intolerance (e.g., lightheadedness or increased fatigue with prolonged standing), other neurocognitive problems (e.g., difficulty comprehending and processing information), fainting, dizziness, and mental problems (e.g., depression, irritability, anxiety).

Social Security Ruling 99-2p ("SSR 99-2p"), reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2009), at 199.

The Ruling notes that "the diagnosis of CFS can be made based on an individual's reported symptoms alone once other possible causes for the symptoms have been ruled out." *Id*. at 200.

For purposes of Social Security disability evaluation, one or more of the following medical signs clinically documented over a period of at least 6 consecutive months establishes the existence of a medically determinable impairment for individuals with CFS:

- Palpably swollen or tender lymph nodes on physical examination;
- Nonexudative pharyngitis;
- Persistent, reproducible muscle tenderness on repeated examinations, including the presence of positive tender points; or
- Any other medical signs that are consistent with medically accepted clinical practice and are consistent with the other evidence in the case record.

5

*Id*.

The plaintiff cites medical evidence in the record of swollen or tender lymph nodes, nonexudative pharyngitis, positive tender points, difficulties with memory and concentration, headaches of a new type, unrefreshing sleep, and depression. Itemized Statement at 4-6. This is sufficient, particularly given the administrative law judge's glancing treatment of this claim, to require remand. The error in dealing with this claim cannot be characterized as harmless, *see, e.g., Bolduc v. Astrue*, Civil No. 09-220-B-W, 2010 WL 276280 (D. Me. Jan. 19, 2010), at *4 n.3, as the severity of the plaintiff's chronic fatigue syndrome, if it is found after appropriate analysis to exist, has not been evaluated by the administrative law judge and may well affect her RFC in ways other than, or in more limited scope of, her ability to sit for up to six hours in a work day and walk or stand up to two hours in an eight-hour work day, the only limits in the RFC currently assigned to the plaintiff that could possibly relate to her fatigue.[2]

At oral argument, counsel for the commissioner contended that the administrative law judge's opinion should nonetheless be upheld because SSR 99-2p requires that the symptoms of chronic fatigue syndrome must occur within the same six-month period in order for chronic fatigue syndrome to be considered a severe impairment, and that this co-duration requirement was not satisfied in this case. In this regard, SSR 99-2p provides that "one or more of the following signs clinically documented over a period of at least 6 consecutive months establishes the existence of a medically determinable impairment for individuals with CFIS[,]" listing palpably swollen or tender lymph nodes on physical examination, "nonexudative pharyngitis,"

---

[2] The plaintiff's Itemized Statement discusses at some length the administrative law judge's rejection of her testimony about her pain in the context of her claim of chronic fatigue syndrome. Itemized Statement at 8-12. Since I conclude that the case must be remanded because the chronic fatigue syndrome was shown to be at least a medically determinable impairment, I see no need to address this issue separately. The plaintiff may make the arguments she makes to this court to the administrative law judge, who should be the initial arbiter of her credibility in any case.

and persistent, reproducible muscle tenderness on repeated examinations, including the presence of positive tender points. SSR 99-2p at 200. Contrary to the commissioner's argument, the Ruling does not require that four different symptoms occur within the same six-month period. Rather, it is the "current CDC definition" of chronic fatigue syndrome, to which the Ruling refers, that includes this requirement. *Id*. at 199.

The plaintiff cites evidence in her medical records of swollen lymph nodes, Itemized Statement at 4, but the cited reports are only from December 21 and 29, 2006. Record at 355-58. The December 29 records refers to "chronic anterior cervi[c]al lymphadenopathy," *id*. at 356, but that is not specific enough, in the absence of expert interpretation, to allow the court or an administrative law judge to determine that there was a period of swelling that lasted at least six consecutive months. The plaintiff next cites three instances of "a recurring sore throat." Itemized Statement at 4. Those entries in the record show a sore throat beginning on June 29, 2007, Record at 343, a sore throat on January 26, 2007, *id*., and a sore throat on August 3, 2006, *id*. at 362, but there is no suggestion that the sore throat continued for any six consecutive months during this period. Indeed, the record shows that the June 2007 sore throat began on that date. Nor was pharyngitis, an "[i]nflammation of the mucous membrane and underlying parts of the pharynx," *Stedman's Medical Dictionary* (27th ed. 2000), at 1361, diagnosed at any of these times.

The only evidence of persistent muscle tenderness proffered by the plaintiff is a citation to page 268 of the record, Itemized Statement at 4, where Donald W. Krause, M.D., reports on a form entitled Medical Opinion re: Ability to Do Work-Related Activities (Physical) that the limitations he ascribes to the plaintiff are supported by medical findings of, *inter alia*, "soft tissue pain [with] multiple trigger points." This statement, unaccompanied by any medical

7

records, does not meet the requirement of SSR 99-2p for "[p]ersistent, reproducible muscle tenderness on repeated examinations, including the presence of positive tender points."

SSR 99-2p also allows a finding that chronic fatigue syndrome is established when medical signs of anxiety or depression, as well as "short-term memory, information processing, visual-spatial difficulties, comprehension, concentration, speech, word-finding, calculation, and other symptoms suggesting persistent neurocognitive impairment" are "ongoing deficits . . . documented by mental status examination or psychological testing" are present. SSR 99-2p at 201. Here, the plaintiff cites evidence of memory impairment and poor concentration. Itemized Statement at 5. Her family nurse practitioner reported "extensive testing" and "memory impairment and concentration related to extreme fatigue and mood changes." Record at 352. The other cited entry in the record, however, is only to the plaintiff's own report of "poor concentration" to her treating licensed clinical social worker. *Id*. at 363.

The plaintiff also cites a "consistent" listing of depression by her primary care provider, the family nurse practitioner. Itemized Statement at 7. The administrative law judge found the plaintiff's depression to be a medically determinable impairment. I agree that there is sufficient documented medical evidence of depression over a period of more than six consecutive months to require the depression to be considered, along with other criteria listed in SSR 99-2p, as evidence of the existence of chronic fatigue syndrome as a severe impairment. *See* Record at 347 (June 1, 2007), 349 (April 26, 2007), 357 (December 21, 2006). The administrative law judge did not consider the plaintiff's depression in this context.

The plaintiff also contends that the administrative law judge should have found that her depression, as a separate medically determinable impairment, was severe at Step 2. Itemized Statement at 6-8. The plaintiff refers to her "primary care provider's review of symptoms

8

[where] the psychiatric portion was consistently listed as positive for depression[,]" the report of her counselor, who "provided a diagnosis of major depression[,]" and a consulting examining psychologist, who said that "[f]rom Ms. Dawes' account, it would appear that she would have difficulty doing work-related activities that would involve memory and learning new tasks." *Id*. at 7-8.

It is important to note that the administrative law judge did find the plaintiff to suffer from a medically determinable impairment of depression, Record at 10, so that the question presented is only that of the severity of that impairment. The consulting psychologist's conclusion, as quoted by the plaintiff, does not support her position; it is directed to her claims of chronic fatigue syndrome rather than her claim of depression as a separate impairment and, more importantly, is based on the plaintiff's statements rather than any testing or examination. The findings of the counselor that are quoted in the plaintiff's itemized statement support a conclusion that the depression, standing alone, was not severe. Finally, the notes of the plaintiff's family nurse practitioner to which she refers reflect that she was usually doing well on medication for depression, *e.g., id.* at 342, 346, and that one of the increases in medication dosage on which the plaintiff relies was actually "for her pain syndrome," and that her mood was better at the time of this increase, *id*. at 345.

In contrast to her treatment of the plaintiff's chronic fatigue syndrome, the administrative law judge's discussion of the severity of the plaintiff's depression, *id*. at 10-11, is sufficient. Her conclusions that the plaintiff's depression was "controlled by medication and [did] not cause more than minimal limitation in the claimant's ability to perform basic mental work activities[,]" *id*., are supported by the medical evidence of record. The administrative law judge also properly

9

considered any limitations caused by the plaintiff's less-than-severe depression in her consideration of the plaintiff's RFC. *Id*. at 11.

There is no error in the commissioner's treatment of the plaintiff's depression.

## B.  Opinions of Treating Medical Providers

While remand is necessary due to the administrative law judge's treatment of the plaintiff's claim of chronic fatigue syndrome, I will also address the final issue raised by the plaintiff for the benefit of the parties. The plaintiff contends that the opinions of Donald Krause, M.D., her treating rheumatologist, should have been accorded controlling weight. Itemized Statement at 12-14.[3] She cites Social Security Ruing 96-2p in support of this contention. *Id*. at 13. She asserts that Dr. Krause was a treating physician whose opinions concerning her ability to perform certain work-related tasks were "supported by medically acceptable clinical diagnostic techniques," and that "[t]he ALJ does not point to any substantial evidence in the record that is inconsistent with Dr. Krause's opinion." *Id*. at 13-14.

The regulation applicable on this point provides, in relevant part: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(d)(2). Here, the administrative law judge's treatment of Dr. Krause's opinion that the plaintiff was limited to sedentary work for no more than four hours per day may well have been influenced by her conclusion that the plaintiff did not suffer from

---

[3] The title of this section of the plaintiff's itemized statement suggests that the administrative law judge "did not give proper weight" to the notes of her treating nurse practitioner, but the very brief text of the itemized statement dealing with that provider that follows the title merely asserts that the administrative law judge's "characterization of these notes is inaccurate." Itemized Statement at 12. I see no mischaracterization of those notes in the opinion, and, in any event, the plaintiff does not suggest why the alleged mischaracterization should entitle her to remand.

chronic fatigue syndrome, Record at 14, for which Dr. Krause was apparently[4] treating the plaintiff. But, in the absence of any evidence in the record to support the plaintiff's assertion that Dr. Krause's opinion was "supported by medically acceptable clinical diagnostic techniques," I need not reach the question whether the record contains any other medical evidence inconsistent with his opinion on this point.

The plaintiff has not made a showing that would entitle her to relief in connection with this issue.

## Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case remanded for further proceedings consistent with this recommended decision.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 19th day of July, 2010.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[4] No medical records from Dr. Krause are included in the record. There is only a four-page questionnaire filled out by Dr. Krause. Record at 267-70.